## DANIEL A. DAY,

### *vs.*

## PUTNAM INSURANCE Co., et al.

A reward was offered for "the arrest and conviction of any incendiary, who should set fire to any property" insured by certain insurance companies in Minneapolis.

A fire was set in a building thus insured, whereby it was destroyed.

Plaintiff was chief of police of said city. The city charter provides for a chief of police and a police force; makes them peace officers; gives them the powers of constables at common law, or by the laws of the state; makes it their duty to execute and serve all warrants and process issued by the city justice for any violation of the laws of the state, or city ordinances, and gives them authority to pursue and arrest any person fleeing from justice in any part of the state, and when performing the duties of constable, as aforesaid, to be entitled to like fees, and empowers the common council at any time to require from them any other and further duties not inconsistent with the charter, and gives them power to enact such ordinances, not repugnant to the constitution and laws of the United States and this state, and for the government and good order of the city, the suppression of vice and intemperance, and the prevention of crime, as they may deem expedient; and specifically to create and establish the police of said city : to prescribe the number of police officers, and their duties, and to regulate the same.

An ordinance of the city made it the duty of the chief of police to perform all the ordinary duties of a policeman, and made it the duty of a policeman to serve all warrants and processes delivered to him for service in said city, and which he was authorized by law to serve; to notice and diligently inquire into and report to the chief of police and city attorney all violations of the city ordinances, violations of the criminal laws of the state, and breaches of the peace; and to make complaint against the person or persons guilty thereof, and to attend punctually on all trials of offences in regard to which complaint had been made by any policeman.

Shortly after said fire, plaintiff was informed by one K. that he could ascertain who set it by inquiring of certain boys, whose names he gave him. Plaintiff, thereupon, looked up one of said boys, and ascertained from him the names and whereabouts of the guilty parties; went before the city justice and swore out a warrant against them, on which he arrested them within the city limits; attended at their examination, and testified as to their statements; had the justice make out subpœnas for witnesses, giving him the names of the witnesses, and served the same, charging the fees for such service, and said parties were afterwards indicted and convicted. *Held*, that none of the above services were other than such as it was his official duty to perform, and that, therefore, he was not entitled by reason thereof to receive such reward; following *Warner vs. Grace*, 14 *Minn.*, 487.

This action was brought in the district court for Hennepin county. The complaint alleges that the defendants, who were insurance companies doing business at Minneapolis in said county, offered a reward of one thousand dollars " for the arrest and conviction of any incendiary, who should set fire to any property " insured by said companies; that fire was set to a building thus insured; that the plaintiff caused the arrest of the incendiaries setting such fire; that they were indicted upon evidence discovered and brought to light by plaintiff, and that they were convicted, pleading guilty. For a defence, the answer, among other things, alleges that at the time the plaintiff performed the acts alleged, he was chief of police of the city of Minneapolis, and that all such acts, in causing the arrest and tending toward the indictment and conviction of such offenders, were performed in pursuance of his duties as such officer, and not otherwise. The cause was tried before a jury, who found a verdict for the plaintiff. The defendants made a motion for a new trial, which was denied, and they appeal from the order denying the same to this court. The material facts, as

disclosed by the evidence, appear in the opinion of the court

CORNELL & BRADLEY, for Appellants.

BEEBE & SHAW, for Respondent.

*By the Court*—RIPLEY, CH. J.—The reward in this case was " for the arrest and conviction of any incendiary, who should set fire to any property" insured by certain insurance companies in Minneapolis  On the 13th of July 1868, a fire was set in a building thus insured, whereby it was destroyed.  This action is brought to recover the reward.

Plaintiff was chief of police of said city.  At the trial he testified, that about July 20th, 1868, he arrested three boys, from eight to ten years old, named Dorsey, McGirk and Petran, for setting the fire ; that one Kelly gave him the first intimation that they were the guilty parties  Kelly told him he thought if he would see two boys named Lovejoy and McAbe, he could get some information in regard to who set the fire.  Plaintiff asked him if that was all he knew about it.  Kelly said it was all he wanted to tell.  He thought plaintiff would find out from the boys above mentioned.  Plaintiff then went to Lovejoy's home, but did not find him.  He then went to McAbe's house, and found him. McAbe, being questioned, told him the boys above mentioned had told him that they burned the building ; that they told each other their secrets  He also told the plaintiff where to find the boys.

Plaintiff then went before the city justice and swore out a warrant against the boys ; arrested two of them at home, in bed, the same night, and the other the next day, at his place of concealment within the city limits

He had a conversation with him, after arresting him, in which he admitted his complicity.  They had an examina-

Day v. Putnam Insurance Co. et al.

tion. The Lovejoy boy was summoned, but did not come. " Charley McAbe was there. I think I summoned the witnesses. I had the justice make out the subpœnas. They had some talk in jail in my presence. I was there alone with the boys, and with Mr Rich, and I think with Mr. Beebe. I heard all their conversation two or three times over.

" I testified in the examination as to their conversation. The boys plead not guilty. They would, 1 think, have plead guilty if their attorneys would have let them.

" Evidence was introduced. I testified before grand jury to same matter. Did not summon the witnesses before the grand jury. Nobody asked me to arrest the boys. Mr. Kelly gave me the names of five or six boys. He did not tell me he thought they set the fire. He told me he thought I could find out by these boys. He also said there was $1,000 reward offered for the incendiaries , said he did not want anything to do with it, or to be known in the matter, nor to have it known that he had said anything to me about it. I knew there was a reward offered. Kelly's was the only information upon which I acted. The boys when I arrested them were in the city. I went to see Charley McAbe, and asked him if he knew Willie Petran and Ed. McGirk. He said he knew them, and then asked me if I wanted to arrest them for burning those buildings. I asked him if they burned the building. He said they did. On the examination the boys did not deny the charge. I caused the witnesses to be summoned. The last was there all the time. 1 don't know that I summoned him. I made the service ( of the subpœnas) and charged the fees, 75 cents for service and 20 cents for travel "

A sheriff or other peace officer may probably perform services in the detection and punishment of crimes, which

it is not his official duty to perform, and for such services he may receive a reward. *Warner vs. Grace*, 14 *Minn.*, 487.

The plaintiff contends that the foregoing testimony tends to prove the performance of such services by him in the arrest and conviction of these boys.

We do not think so. The city ordinance, prescribing the duties of the police of Minneapolis, makes it the duty of the chief of police to perform all the ordinary duties of a policeman; and makes it the duty of a policeman to serve all warrants and processes delivered to such policeman for service in said city, and which by law he is authorized to serve; to notice and diligently inquire into and report to the chief of police and city attorney all violations of the city ordinances; violations of the criminal laws of the state, and breaches of the peace, and to make complaint against the person or persons guilty thereof, and to attend punctually on all trials of offences in regard to which complaint has been made by any policeman.

The city charter provides for a chief of police, and police force; makes them peace officers; gives them the powers of constables at common law, or by the laws of the state; makes it their duty to execute and serve all warrants and processes issued by the city justice for any violation of the laws of the state, or city ordinances, and gives them authority to pursue and arrest any persons fleeing from justice, in any part of this state, and when performing the duties of constables as aforesaid, they are to be entitled to like fees. *Spec. Laws* 1867. *ch.* 19, *pp.* 54, 61.

With the exception of his testimony before the grand jury, we cannot see that the plaintiff has done anything outside the line of his official duty, as laid down in the above law and ordinance.

If he went before the grand jury of his own motion, the

burden being on him to make out his case, he should have shown that fact. For aught that appears, his appearance before that body was like that of any other witness, in obedience to process regularly issued therefor. As to his other services, the case of *Pool vs. Boston*, 5 *Cush.* 219, appears to be directly in point. In that case the facts were, that a reward had been offered for the detection and conviction of any incendiary, and that plaintiff, a city watchman, duly appointed, and while in the performance of his duty as such watchman, discovered one Hollohan setting fire to a building. Thereupon, he made a complaint in the police court against Hollohan, upon which he was committed, and afterwards indicted, tried and convicted. The court held that plaintiff had only done his duty, and therefore was not entitled to the reward.

"It was his duty, when on the watch he discovered Hollohan setting fire to the out-house, to make complaint, and cause him to be arrested, or to give notice to the mayor, or some other city officer, that they might prosecute him.

"He preferred himself to prosecute, rather than to give notice to the city authorities, doubtless with the hope of thereby entitling himself to the large reward offered; but this will not help him.

"The principal object of the reward offered, was to obtain the detection of the offender; the conviction was required to ascertain who was the offender.

"But to entitle the plaintiff to the reward, he must show that he is so entitled as well for the detection, as for the conviction of the offender.

"The reward cannot be apportioned.

"But the plaintiff is not entitled thereto for either services.

"He discovered the offender while he was on duty as a

watchman, and was bound to give notice, or to cause him to be arrested ; and he preferred the latter course ; but he could not thereby subject the defendants to a liability, to which they would not be subject, if he had given notice to some of the city officers."

In the case at bar, plaintiff's duty under the ordinance above cited, required him to make the inquiries which, acting on Kelly's information, he did make ; it required him to make complaint, and to execute the warrant delivered to him thereupon, by arresting the persons therein named, and bringing them before the magistrate, there to be dealt with according to law ; and for that purpose to use the utmost diligence to find them. A policeman who was not also a chief of police, would have also been bound to give notice to the chief of police and city attorney ; the purpose of which is to ensure the prosecution of offenders.

The plaintiff acting as a policeman, was bound, like the watchman in the case cited, to notify the city attorney, whose duty it would thereupon have been to further prosecute the case, or to prosecute it himself. He preferred the latter course, but he could not thereby subject the defendants to a liability, to which they would not be subject, if he had given notice to the proper prosecuting officer. Suppose one of his subordinates, instead of reporting to him or the attorney, had sworn out a warrant ; arrested the boys ; and attended at, and conducted the examination to the same extent that plaintiff did.

The procuring of evidence ; the hunting up and furnishing the names of the witnesses ; the getting out of subpœnas ; the conducting of the prosecution ; all these, says the plaintiff, fall to the prosecuting attorney.

Could such a policeman, omitting to notify his superior officer or the prosecuting attorney, perform these services,

and obtain the reward, on the ground that they were outside of his official duty ?

Would not that be to subject defendants to a liability to which they would not be subject, if he had given notice to some one of the city officers ? Certainly it would ; and if this be true of the subordinate, much more so is it of his superior officer, whose wider range of official duty contemplates action on his part beyond the mere swearing out, and service of process.

It is said, however, that this offence was not a violation of a city ordinance, but of the laws of the state ; that as to such, he acts as a constable : that the statute above quoted fixes his duties as a constable, and the city ordinance could not enlarge his duties in that respect.

That is to say, if we understand the point, that in so far as the services performed by plaintiff in and about the arrest and conviction of these offenders (though required of him by the ordinance) were such as were outside the official duty of a constable, to that extent, they come within the class of cases above referred to, as services which he was not legally bound to perform, and for which he may receive a reward.

The common council, however, can certainly impose upon policemen, in respect to violation of state laws, other duties than those specified in said section.

By chapter 3, section 22, they have the power, at any time to require other and further duties to be performed by the chief of police, and police force, as well as other city officers, not inconsistent with the charter.

The plaintiff says it is not a constable's duty to make a complaint : but certainly it is not inconsistent with his duty as such, to require him to do that of which the general statutes contemplate his performance. *Ch.* 65., *sec.* 132. Still less is it, to require him to be diligent in inquiry, and report

respecting such offences, or to attend upon the trial of the complaint.

Further than this, chapter four, section three, of said charter gives the common council "full power and authority" to enact such ordinances, not repugnant to the constitution and laws of the United States and this state, and which shall have the force of law for the government and good order of the city; the suppression of vice and intemperance, and prevention of crime, as they may deem expedient.

The provisions in question are certainly expedient to these ends; as certainly not repugnant to the constitution or laws.

Moreover, among the specified powers, is, to "create and establish the police of said city; to prescribe the number of police officers, and their duties, and to regulate the same." *Ch.* 14, *sec.* 3. *par.* 24.

In view of these provisions, it is impossible to contend successfully, that the common council have no power to impose upon their police, with respect to offences against the laws of the state, any other duties than those specified in section seven.

Supposing, however, that they have no such power, plaintiff, nevertheless, having the powers of a constable, is bound to perform the duties of that officer, and is still within the principle of the case above cited. As such, it was his duty " to do his utmost to discover, pursue and apprehend felons." (39 *E. C. L.* 856.) He would have been grossly remiss therein, if upon communication made to him as an officer, he had not made inquiry; if upon such inquiry, he had not taken steps to apprehend the guilty parties.

He might have arrested them without warrant, but if he thought it more likely to insure success in their apprehension, it was his duty to procure such warrant, and then to use his best exertions for its service.

It would be setting a dangerous precedent, to hold that a constable may take such action or not at his option, and that his official duty is limited to the service of process.

And if, as the plaintiff contends, the services performed by him in conducting the prosecution were outside the duties of a constable, and belonged to the prosecuting attorney; he cannot, in this case, any more than the plaintiff in the case cited, entitle himself to a reward by taking their performance upon himself, instead of notifying the city attorney.

If it be said, that it was no part of the official duty of that officer to attend such examinations; assuming this to be so, we are necessarily remitted to the provisions of the general statutes in that respect, as to which, it is the duty of the county attorney to attend upon all such, when the magistrate before whom such examination is held shall request his attendance, and furnish him with a copy of the complaint, and to issue subpœnas for witnesses. *Gen. Stat. Ch.* 8, *Sec.* 181.

Before the plaintiff could lay any claim to the reward, because of performing these services, in the absence of the county attorney, he must show that the magistrate had required that officer's presence.

If not, it must have been, either, because the services were unnecessary, in which case no person could entitle himself to a reward by their performance, or because of plaintiff's volunteering to perform them ; and he certainly could not thereby subject the defendants to liability.

For these reasons we are of opinion that the order denying a new trial must be reversed.

The plaintiff performed his duty faithfully and effectually, but this cannot in law *entitle* him to the reward.

Order appealed from reversed.