[S. F. No. 614.   In Bank.—March 11, 1898.]

## I. W. LEES, Respondent, v. E. P. COLGAN, Controller, etc., Appellant.

REWARD OFFERED BY GOVERNOR—APPREHENSION OF MURDERER BY CAPTAIN OF POLICE—OFFICIAL DUTY—PUBLIC POLICY.—A captain of police of the city and county of San Francisco, who apprehends a murderer in such city and county, for a murder committed in another county, makes the arrest of the murderer in the line of his official duty; and it is against sound public policy to allow such an officer to receive a reward offered by the governor of the state for the arrest and conviction of said murderer.

ID.—AUTHORITY OF GOVERNOR TO OFFER REWARD.—Under section 1847 of the Civil Code, the authority of the governor to offer a reward is limited to the apprehension of certain criminals, and no importance can be attached to services rendered in furnishing evidence to convict the criminal apprehended, though the reward offered by the governor purported to include conviction of the offender.

ID.—COMPENSATION OF PUBLIC OFFICER—ADDITIONAL REWARD NOT ALLOWABLE.—A public officer working for a fixed compensation, or whose fees are prescribed by law, cannot demand or contract for a reward for services rendered in the line or scope of his public duty, either from private parties, or from the state, or from any municipality.

ID.—POWER OF LEGISLATURE—CONSTRUCTION OF STATUTE—AUTHORITY OF GOVERNOR.—Although the legislature has power to declare a public policy which has been declared unsound and vicious in every other jurisdiction, yet it will not be held to have taken such a step, unless the intent is plainly manifest from the terms of the act; and the grant of mere power to the governor to offer a reward for the apprehension of criminals, does not carry an implied power to offer it to any and all persons, including public officers whose duty it is to make the arrest, but it will be construed to apply only to induce an arrest by private persons not under obligation to make such arrest.

ID.—OFFICIAL DUTY OF POLICE OFFICER—ARREST OF CRIMINALS—ABSENCE OF WARRANT.—A police officer of a city is made a peace officer by section 817 of the Penal Code, whose duty it is under section 836 of that code to make an arrest for a public offense committed in his pres-ence, or when the person arrested has committed a felony, although not in his presence, or when a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have com-mitted it, and the fact that the arrest is made without a warrant, in no degree changes the legal complexion of the case, as it must·be assumed that there was reasonable cause for the arrest, and, if so, it was his duty to make it.

ID.—CONSENT OF POLICE COMMISSIONERS TO REWARD—CONSTRUCTION OF CHARTER.—Section 26 of the Consolidation Act of the city and county of San Francisco, providing that no police officer shall receive any present or reward for official services unless with the knowledge and approbation of a majority of the police commissioners, conceding it to be in force, whatever effect it may have as to other rewards cannot apply to the obtaining of a reward from the state, where the state stands upon its strict legal right, and is, through an authorized offi-cer, objecting to the payment of such reward.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco awarding a peremptory writ of mandate to the Controller of State. J. M. Troutt, Judge.

The facts are stated in the opinion of the court.

W. F. Fitzgerald, Attorney General, and W. H. Anderson, As-sistant Attorney General, for Appellant.

A policeman is a peace officer whose duty it is to make arrests with or without a warrant, where a felony has been committed. (Pen. Code, sec. 8, subd. 7, pp. 817, 836.) Section 26 of the Consolidation Act is repealed by the act of May 17, 1861, fix-ing the fees and salaries of officers. (Secs. 1, 11.) A public officer cannot receive any extra compensation or reward for the performance of a duty enjoined by law. (*Heslep v. Sacramento*, 2 Cal. 580; *Stockton v. County of Shasta*, 11 Cal. 114; *Rowe v. County of Kern*, 72 Cal. 353; Mechem on Public Offices and Officers, sec. 861.) Promises of reward to public officers are void as being without consideration and against public policy. (*Hatch v. Mann*, 15 Wend. 44–51; *Kick v. Merry*, 23 Mo. 72; 66 Am. Dec. 658; *Thornton v. Missouri Pac. Ry. Co.*, 42 Mo. App. 58; *Ex parte Gore*, 57 Miss. 251; *Warner v. Grace*, 14 Minn. 487; *Gilmore v. Lewis*, 12 Ohio, 281; *Mark-*

*ing v. Needy*, 8 Bush, 22; *Mitchell v. Vance*, 5 T. B. Mon. 528;
17 Am. Dec. 96; *Stamper v. Temple*, 6 Humph. 113; 44 Am.
Dec. 296; *Smith v. Whildin*, 10 Pa. St. 39; 49 Am. Dec. 572;
*Matter of Russell*, 51 Conn. 577; 50 Am. Rep. 55; *St. Louis etc.
R. R. Co. v. Grafton*, 51 Ark. 504; 14 Am. St. Rep. 66; *Pool v.
Boston*, 5 Cush. 219; *Davies v. Burns*, 5 Allen, 349; *Brophy v
Marble*, 118 Mass. 548.)

Davis Louderback, for Respondent.

The petitioner was entitled to receive the reward offered by
the governor.  (Annotated Pen. Code, sec. 1547; Annotated
Pol. Code, sec. 1054; Stats. 1875-76, p. 855; Consolidation Act
of San Francisco, sec. 26; *County of Butler v. Liebold*, 107 Pa.
St. 407; *City Bank v. Bangs*, 2 Edw. Ch. 97, 98; *Loring v
Boston*, 7 Met. 413; *Ryer v. Stockwell*, 14 Cal. 137; 73 Am. Dec
634; *Auditor v. Ballard*, 9 Bush, 571, 572; 15 Am. Rep. 728;
*Cummings v. Gann*, 52 Pa. St. 490; *State v. Morton*, 42 Mo. App.
64; *Harris v. More*, 70 Cal. 502; *Davis v. Munson*, 43 Vt. 676;
5 Am. Rep. 315; *Russell v. Stewart*, 44 Vt. 173; *Smith v. Moore*,
1 Man., G. & S. 438; *Burke v. Wells, Fargo & Co.*, 34 Cal. 60.)
Section 26 of the Consolidation Act of the city and county of
San Francisco was not repealed by implication.  Such repeals
are not favored.  (*Matter of Yick Wo*, 68 Cal. 304; *People v. San
Francisco etc. R. R. Co.*, 28 Cal. 254; *Scofield v. White*, 7 Cal.
400; *Ex parte Smith*, 40 Cal. 420; *Capron v. Hitchcock*, 98 Cal.
432; *Home for Inebriates v. Reis*, 95 Cal. 148.)

GAROUTTE, J.—This is an appeal from an order of the su-
perior court directing the issuance of a writ of mandate to the
state controller, requiring him to draw his warrant upon the
state treasury in favor of petitioner for the sum of one thousand
dollars.  The application is based upon the following facts: Peti-
tioner was a captain of police of the city and county of San
Francisco.  The governor of the state offered a reward of one
thousand dollars for the arrest and conviction of the person or
persons who murdered one Webber in the city of Sacramento.
Petitioner arrested the murderer of Webber in the city and
county of San Francisco, and furnished witnesses and evidence
upon which a conviction was subsequently had.  By right of
these facts he now claims the reward of one thousand dollars.

There are other matters set forth in the petition for the writ, but we do not deem them material to the issue before us.

The governor of the state offered this reward by virtue of the authority found in section 1547 of the Penal Code, and that section declares:

"The governor may offer a reward not exceeding one thousand dollars, payable out of the general fund, for the apprehension:

"1. . . . . 2. Of any person who has committed or is charged with the commission of an offense punishable with death."

It will be observed that the power of the governor is limited to offering rewards for the apprehension of certain criminals. For that reason we attach no importance to the allegations of the petition wherein it is declared that petitioner furnished the evidence upon which the murderer was convicted. It follows from what has already been said that the only question here presented is: May a police officer of the city and county of San Francisco, who arrests a murderer for a crime committed in another county of the state, and without a warrant, recover a reward offered by the state for the arrest of such murderer? The answer to this question is largely dependent upon the conclusion to be reached from two other propositions of law, namely: Was it the official duty of this captain of police to make the arrest of the criminal; and, if so, is it against sound public policy to allow such an officer to receive a reward for the performance of his duty?

The last legal proposition stated must be declared in the affirmative. ' The courts, both in this country and England, are practically unanimous in declaring that a public officer working for a fixed compensation, or whose fees are prescribed by law, cannot demand or contract for a reward for services rendered in the line or scope of his official duty. In the well-considered case, *Maller of Russell*, 51 Conn. 577, 50 Am. Rep. 55, it is said: "And no case can be found—at least I have not been able to find any—in which the claim of a public officer to receive a reward for services rendered in the performance of his official duties has received the sanction of a court of last resort in this country or in England." A deputy sheriff making an arrest in the line of his duty is not entitled to a reward offered for such arrest. (*Stamper v. Temple*, 6 Humph. 113; 44 Am. Dec. 296.)

In *Morrell v. Quarles*, 35 Ala. 548, it was held that a police officer making an arrest in the line of his duty was not entitled to a reward. In *Ex parte Gore*, 57 Miss. 251, it is declared that a constable is not entitled to a reward for making an arrest in the line of duty, and in that case it was further decided: "The reward offered by section 2786 of the code was designed to induce the arrest of fleeing homicides by persons not under an official obligation to do it." A police officer in the performance of his duty is not entitled to a reward for the apprehension of a criminal. (*Day v. Putnam Ins. Co.*, 16 Minn. 408.) A police officer cannot take a reward for services rendered within the duties of his office, or for which he receives a fixed salary. (*Kick v. Merry,* 23 Mo. 72.) The same principle is again declared in *Thornton v. Missouri Pac. Ry. Co.*, 42 Mo. App. 58. (See, also, *Smith v. Whildin*, 10 Pa. St. 39; 49 Am. Dec. 572; *Warner v. Grace*, 14 Minn. 487.) Counsel for petitioner to some extent concedes the soundness of the doctrine laid down in the foregoing cases as to rewards offered by private parties; but claims the doctrine is not to be applied to governmental or state rewards. We fail to see any substantial difference in principle as to rewards offered by private parties and rewards offered by the state. They stand upon common ground. The basis of the sound public policy supporting the text of the many cases cited is thus declared in *Kick v. Merry, supra:* "The services rendered were within the duties of his office. All his energies had been devoted to the service of the city. Under such circumstances, to permit an officer to stipulate for extra compensation for services to which the public was entitled, would lead to great corruption and oppression in office. It would follow that whenever a crime was committed, instead of speedy efforts for the arrest of the offender, there would be a holding back in the hope that there would be a reward given for his apprehension. If once a habit of taking a reward is introduced, nothing will be done unless the service is previously purchased by extra pay." This reasoning undoubtedly applies to rewards offered by the state as fully as to rewards offered by private parties.

No case has been cited, and we know of none, where an appellate court has declared the existence in principle of any well-defined distinction as to public officers, in cases where rewards

have been offered by the state or municipality, and where rewards have been offered by private parties. No case has been cited where a reward offered by the state or municipality has been recovered by a public officer who simply did some act or acts in the performance of his official duty as the basis of his claim. To the contrary we cite *Pool v. Boston*, 5 Cush. 219; *Ex parte Gore, supra; Pilie v. New Orleans*, 19 La. Ann., 274; *Harris v. Beaven*, 11 Bush, 254; *Williams v. Thweatl*, 12 Rich. 478.

It is insisted that when the state, by its legislature, authorized the governor to offer a reward for the apprehension of certain criminals, such reward is offered to all persons, and necessarily includes sheriffs, police officers, etc; and that therefore the state by such action has declared its own public policy as to rewards for the apprehension of criminals. The state has a right to declare what is sound public policy upon this question, however variant its views may be with elementary principles declared by the decisions of courts of other states and countries. And, if this state had authorized the governor in terms to offer this reward to sheriffs and other peace officers, the courts would have been bound to sustain such a law, as far as any question of public policy was concerned. But the statute here goes to no such lengths. If the state through its governor possessed the inherent power to offer this reward, we would hold in line with the many decisions cited that peace officers could not recover. Yet it would seem that the legislature by this statute only attempted to place in the hands of the governor a power which probably did not inherently rest in him, namely, the power of offering rewards payable out of the state treasury for the apprehension of criminals. The grant of a mere power to the governor to offer a reward does not necessarily carry with it any implied power to offer the reward to any and all persons. To hold that the legislature intended these rewards to be recovered by peace officers is to hold that such body intended to declare a certain course of action sound public policy in this state which has been declared unsound and vicious public policy in every other jurisdiction. While the state legislature had the power to take this radical and unusual position, we will not hold that

it has taken such a step unless such an intent is plainly manifest from the act itself. Here the purpose of the act was directed to placing the power in the hands of the governor to offer rewards for the apprehension of criminals. The particular persons to whom the rewards might or should be paid was a matter not in the legislative mind. In *Ex parte Gore, supra,* under a very similar statute, the court said: "The reward offered by section 2786 of the code was designed to induce the arrest of fleeing homicides by persons not under an official obligation to do it." In *Harris v. Beaven, supra,* the construction of a statute similar in principle to the one at bar was under consideration. The court there declared: "Having thus provided what was deemed suitable compensation, did the legislature intend by enacting section 8, chapter 42, *supra,* to enable the commonwealth's attorneys by entering their own names on indictments as prosecutors to secure to themselves, in addition to the compensation otherwise provided, the compensation given by that section to prosecutors? We think not. The object had in view no doubt was to bring private individuals to aid the prosecution by offering as an inducement a part of the fine. It was the duty of the commonwealth's attorney to do all that he could reasonably and fairly to secure the conviction of Harris, for the salary and perquisites given him as such, and when he became prosecutor he came under no new obligation to the state in the prosecution of the case, and could not lawfully render any service therein which he was not bound to render before assuming the relation of prosecutor." It may well be said in the case at bar that this plaintiff in arresting the murderer did not render any service to the state which he was not bound to render regardless of the existence of any reward.

Was it the official duty of the petitioner to arrest the murderer? There can be but one answer to this question. Section 817 of the Penal Code of this state declares a police officer of a city to be a peace officer. The arrest in this case was made without a warrant, but such fact in no degree changes the legal complexion of the merits of the litigation. Section 836 of the Penal Code declares that a peace officer may make an arrest in obedience to a warrant delivered to him, or may without a warrant arrest a person:

1. For a public offense committed or attempted in his presence; 2. When a person arrested has committed a felony, although not in his presence; 3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

In other words, it is the duty of the peace officer to make arrests under any of the foregoing conditions. It certainly would be his duty to make an arrest where a public offense was committed in his presence. It likewise would surely be his duty to make an arrest where he held a valid warrant ordering the arrest. Yet under the statute quoted it is no more his duty to make arrests under such circumstances than it is when a felony has been committed, and he has reasonable cause for believing a certain person to have committed it. Here of necessity it must be assumed that petitioner had reasonable cause for making the arrest. It will not be assumed that he made it without good cause, and, if he had good cause for the arrest, it was his duty to make it. It cannot be contended for a moment but that a police officer would be grossly neglectful of his duty if the opportunity presented itself and he failed to arrest a person, having reasonable cause to believe such person to be a murderer. Again, the consolidation act of the city and county of San Francisco, section 26, declares: "Police officers in subjection to the orders of the respective captains, and all under the general direction of the chief of police, shall be prompt and vigilant in the detection of crime, the arrest of public offenders, the suppression of all riots, affrays, duels and disturbance of the peace," etc. Under this broad declaration of the duties of police officers, it clearly devolved upon petitioner to make this arrest. Here was a public offender, a man who had committed a horrible crime. The petitioner was a police officer and knew the fact. Under such circumstances it was beyond doubt his duty to be prompt and vigilant in taking such an offender into custody.

The aforesaid section of the consolidation act further provides: "Neither the chief of police, captains or any other officer of police shall . . . . receive any present or reward for official services rendered or to be rendered, unless with the knowledge and approbation of a majority of the police commissioners." Whether

·or not this provision of the act has been repealed by subsequent legislation is not a matter of concern; for, conceding its present ·existence, it has no bearing upon this case. Whatever rewards police officers may accept from private parties with the consent ·of the police commission, is another and entirely different matter. Here there is no question of agreement or consent upon the part of all parties interested. The state is here standing upon its strict legal right, and through one of its duly authorized officers objecting to the payment of this money.

For the foregong reasons the judgment is reversed and the cause remanded.

Temple, J., Van Fleet, J., Harrison, J., and Henshaw, J., concurred.

McFARLAND, J., dissenting.—I dissent. The authorities are not all to the point that an offer of reward, even by a private person to an officer, is void because against public policy; there are authorities the other way—some of which are recited in the respondent's brief. Giving full force to the reasons upon which the cases cited in the prevailing opinion were decided, I am still inclined to think that the better doctrine is stated in *City Bank v. Bangs,* 2 Edw. Ch. 97, where, speaking of an offer of reward, it is said: "The object is to awaken public attention to the subject, excite vigilance, and call forth extraordinary individual efforts for the accomplishment of the end proposed to be gained. All who choose to engage in it are at liberty to do so, and he who succeeds becomes entitled to the reward upon the ground of his superior vigilance or sagacity, or of his having used greater exertions or encountered dangers which others were disinclined or not in the situation to hazard. When, therefore, we view the objects of reward offered thus publicly in their true light, a participation in their benefits, or in the receipt of them, cannot be considered wholly incompatible with the duties of public officers or against the policy of the law." When a policeman or sheriff is informed that a horrible murder had been committed in a remote county and that the perpetrator is at large, it may be said that the officer is under some general official obligation to see if the offender is lurking in his city or county; but I cannot see how public policy is outraged by an offer which

will spur such officers to extraordinary vigilance and exertion in the interest of public justice. However, when the legislature, by statutory law, expressly authorizes a thing to be done, there is no room for judicial inquiry as to the policy of the thing authorized. In such cases the legislature declares the policy, as it has the right to do, and the statute can be attacked only on the ground of its unconstitutionality; and there is no such attack here. The only question left, therefore, is as to the construction of the section of the code involved; but, in my opinion, there is here no field for the exercise of any principle of construction, because the language of the section is perfectly plain and clear. It makes no exception of any person or persons. It does not provide—as it might have done—that the governor may offer a reward to any person "not being a sheriff, marshal, constable or policeman"; and I do not think that there is good reason for judicially inserting an exception which the legislature did not make.

In my opinion the judgment should be affirmed.