THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JENARO RODRÍGUEZ HERNÁNDEZ, Defendant and Appellant.

No. 5743. Argued April 12, 1935.—Decided April 24, 1935.

384

*E. Martínez Avilés* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Andrés Torres, an insular policeman, filed charges against Jenaro Rodríguez Hernández for an offense of aggravated assault. The complaint, signed by such officer, reads in part as follows:

" . . . The aforesaid Jenaro Rodríguez Hernández assaulted the complainant with a dagger, striking several blows at the head, which he was able to avoid by making most extraordinary efforts. The aggravation alleged in this complaint consists in that the complainant is and was a completely uniformed insular policeman, showing his insignia as such officer and whom the defendant knew perfectly well as such officer, who at that time was in the exercise of the duties of his office, since he was engaged in the arrest of the defendant, who had committed a felony and another offense of carrying weapons."

The District Court of Arecibo found the defendant guilty and sentenced him to three months in jail and to the payment of costs.

█ It is contended that the court below erred in believing the witnesses for the prosecution, notwithstanding the fundamental contradictions in their testimony, and in holding that a citizen can be arrested in his own house at three o'clock in the morning, without a search warrant or warrant of arrest, and without it having been shown that the person arrested had committed a felony.

There were three witnesses who testified in the case: Andrés Torres and Rosario Polanco in support of the charge, and Paula Jiménez as witness for the defense. The insular policeman Andrés Torres began his testimony as follows:

"I was on night duty that night and at two o'clock in the morning a car drew up to the office of Dr. Quiñones, with a wounded man, and I went up and investigated, and it turned out that this man..."

"Q. Not what turned out. You went there and saw a wounded man?

"A. Yes, sir.

"Q. Who was it?

"A. Saro Polanco.

"Q. What did you do?

"A. I came to the conclusion . . .

"Mr. Martínez Avilés. I move that that be stricken.

"The Court. Yes, let it be stricken out."

The witness continued to testify that he went out to the ward of Florida Afuera with the intention of arresting Jenaro Rodríguez, that he knocked on the door of his home and that the wife of the defendant opened the door, that he asked her if Jenaro Rodríguez was in the house, and that she answered in the negative; that the defendant's wife asked him to enter and see that he was not in the house, and that the defendant was hiding with a machete in his hand; and that when he put his head in, the defendant struck a blow at him with it, which he was able to avoid; that when he saw the defendant he was already on top of him; that that hap-

pened about four in the morning, that the defendant struck one blow at him with the machete and could not strike any more because he wrappled with him; that he could not arrest him, but that the next day in the morning they came and took him to jail; that he did not strike the defendant and did not know that he had done so; that the defendant's wife told him to come in and see that her husband was not there and that upon coming in, he struck at him with a machete; that the machete struck a beam and then the witness seized the defendant's arms; that he went in uniform and that the defendant saw him in uniform.

Rosario Polanco testified that early in the morning of June 24 he was with the defendant Torres in the house of Jenaro Rodríguez, whom they went to arrest; that the defendant had wounded a brother of the witness; that the wounded man was in the hospital, in the Clinic of Dr. Quiñones; that the policeman went to the house of Jenaro Rodríguez and asked his wife if he was there; that he called and knocked, and the wife Paula answered; that they opened the door and the policeman asked if he could enter and they answered yes, and that when the policeman entered the room Jenaro Rodríguez came out with a machete, striking at him with it; that his wife had a lamp in her hand which she put in a corner when the policeman came in; that Jenaro Rodríguez attacked the policeman with a machete, and the policeman stepped back; that the defendant struck at the policeman several times with the machete, and the latter defended himself by stepping back. Paula Jiménez, wife of the defendant, testified that at three o'clock in the morning the policeman Torres arrived and asked if Jenaro was there; that the witness told him no; that the witness struck three times with his nightstick and told her to open the door, and that he made her open the door and forced himself into the room, to look under the bed; that at that moment Jenaro arrived and, upon being told that he had come to arrest him, asked him to excuse him, that at that hour he could not go; that

then the policeman flung himself outside and fired two shots; that when Jenaro Rodríguez reached his house the policeman was inside, looking under the bed; that the witness was there with four children; that she does not know what had happened to her husband; that the policeman did nothing to her husband, but that he looked inside the house and asked her to open the door; that in the morning three policemen came in search of her husband and arrested him; that he had a dagger in the house and in the morning, when the policemen came, they took it from behind the house, from a pile of wood which he was splitting.

In the opinion of the defense the contradictions in the testimony of the witnesses for the prosecution, Torres and Polanco, are of such a nature as necessarily to force the conclusion that such witnesses were not speaking the truth. From a careful examination of the evidence, it may be said that in substance those witnesses only disagreed as to the number of blows with a machete which the defendant aimed at the policeman. Torres testified that the defendant was not able to strike at him more than once with the machete, while Polanco says that he struck at him several times. There are other details of little importance. For example, attention is called to the fact that the policeman said that he asked assistance from the policeman Polanco, in spite of having testified that at that time there was no policeman there other than himself. Evidently, the witness was referring to his companion, the brother of the wounded man, Rosario Polanco, whom he called policeman by mistake.

The wife of the defendant stated that Jenaro told the policeman to excuse him, that he could not go at that hour, and that then the policeman flung himself outside and fired two shots. She admitted that the policeman did nothing to her husband, but that he searched within the house. The truth is that the policeman Torres had to give up his intention of arresting Jenaro Rodríguez at that time and had to use three policemen to make the arrest of the defendant in the morn-

ing. The evidence of the prosecution shows that there was resistance. Paula Jiménez says that her husband arrived later, when the policeman was inside the house, but she does not deny that he assaulted the policeman with a machete. We do not think that the court below committed manifest error in holding as proved the fact that the defendant assaulted the policeman in question with a machete.

As to the arrest which the said policeman intended to make in the very house of the defendant at three o'clock in the morning without any search warrant or order of arrest and without it having been shown that the person arrested had committed a felony, is a question which is not discussed with due fullness in the briefs, but which merits careful consideration upon our part. The Organic Act of Puerto Rico (sec. 2, par. 14) provides that no warrant for arrest or search shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. This provision does not prohibit arrests without warrant, but merely the issuance of a warrant without just cause and without the basis of a statement supported by an oath or affirmation.

Section 116 of the Code of Criminal Procedure provides that a peace officer may make an arrest in obedience to a warrant delivered to him for such purpose, or may, without a warrant, arrest a person in the following cases:

1. For a public offense committed or attempted in his presence;
2. When a person arrested has committed a felony, although not in his presence;
3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it;
4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested;
5. At night, when there is reasonable cause to believe that he has committed a felony.

There is no doubt that an arrest may be made at night when the officer has reasonable cause for believing that a

felony has been committed by the person sought to be arrested. The reasons for holding this belief must be of such a nature as to impress and influence the mind of a prudent and cautious person under the circumstances. *People* v. *Ford,* 191 N. E. 315.

█ In the instant case the policeman Torres learned that Jenaro Rodríguez had wounded a man who had been placed in a hospital. The character of the wound and the circumstances under which it was inflicted do not appear from the evidence. When the policeman seemed disposed to explain, the interruptions of counsel diverted his testimony, and he was not asked at any time as to the information which he had to decide to make the arrest of the defendant.

The Supreme Court of California, in the case of *Davis* v. *Pacific Telephone & Telegraph Co.,* 57 Pac. 764, expressed itself as follows:

"There is no statement as to whether the arrest was with or without a warrant, and the presumption of law is that a public officer performed his duty, and in this case the presumption would be that the officer either had a warrant, or that the 'criminal offense' was committed in the presence of the officer. The allegation of the complaint is 'that he was charged with a criminal offense,' and in such case plaintiff cannot now claim 'that he was not charged with any criminal offense.' Being charged with a criminal offense, and arrested by a police officer, and nothing being averred to the contrary, it is presumed the officer had the proper warrant."

In the case of *Lees* v. *Colgan,* 120 Cal. 262, 52 Pac. 502, the same court, in commenting on section 836 of the Penal Code of California, which is equivalent to 116 of our Code of Criminal Procedure, after copying in part the provisions of such section, said:

"In other words, it is the duty of the peace officer to make arrests under any of the foregoing conditions. It certainly would be his duty to make an arrest where a public offense was committed in his presence. It likewise would surely be his duty to make an arrest where he held a valid warrant ordering the arrest. Yet under the

statute quoted it is no more his duty to make arrests under such circumstances than it is when a felony has been committed, and he has reasonable cause for believing a certain person to have committed it. Here of necessity it must be assumed that petitioner had reasonable cause for making the arrest. It will not be assumed that he made it without good cause, and, if he had good cause for the arrest, it was his duty to make it.''

These are the only cases which we have found holding that, in the absence of evidence to the contrary, the presumption must prevail that the peace officer complied with his duty in making the arrest. In volume 3 of the work ''California Jurisprudence,'' page 120, the case of *Lees* v. *Colgan, supra,* is cited, and it is said that, in the absence of evidence to the contrary, it must be assumed that the officer had reasonable cause to make the arrest. It is not necessary, however, to decide this point at this time, since, in our opinion, the evidence shows that, even upon the hypothesis that the arrest would have been unlawful, the defendant assaulted the policeman Torres unnecessarily. The right of a person to resist unlawful arrest is not unlimited. Although it is true that a person sought to be illegally arrested may use proper force to resist the arrest, nevertheless, if the means used to avoid detention are disproportionate, such resistance is unlawful. 2 R. C. L. 474; *Porter* v. *State,* 124 Ga. 297, 2 L. R. A. (N.S.) 730.

In the instant case, according to the testimony of the policeman, which was believed by the lower court, the defendant, who was hidden, struck a blow at him with a machete when he put his head in, which he was able to avoid. The machete hit a beam, and then Torres threw himself upon the defendant to prevent him from continuing to strike at him. The policeman entered the house with the consent of the defendant's wife, and it has not been shown that he sought to use any violence on the person of the defendant to carry out the arrest. The evidence shows that the assault was without justification. Under these circumstances, it can not

be concluded that the lower court erred in holding Jenaro Rodríguez guilty of the offense of assault with which he was charged.

The judgment appealed from must be affirmed.