El Pueblo de Puerto Rico, demandante y apelado, *v.* Jenaro Rodríguez Hernández, acusado y apelante.

No. 5743.—*Sometido:* Abril 12, 1935. *Resuelto:* Abril 24, 1935.

*E. Martínez Avilés,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Andrés Torres, policía insular, formuló denuncia contra Jenaro Rodríguez Hernández por un delito de acometimiento grave. La querella, suscrita por dicho funcionario, dice, en parte, así:

" . . .El referido Jenaro Rodríguez Hernández acometió con una daga al denunciante, tirándole varios tajos a la cabeza, los cuales, haciendo inauditos esfuerzos, pudo evadir. Las agravantes que se alegan en esta denuncia son que el denunciante es y era un policía insular completamente uniformado, luciendo sus insignias como tal funcionario y a quien el acusado conocía perfectamente como tal funcionario, quien en aquel momento se encontraba en el ejercicio de las funciones de su cargo, toda vez que se empeñaba en el arresto del acusado, quien había cometido un delito *felony* y otro delito de de portar armas."

La Corte de Distrito de Arecibo declaró culpable al acusado, y lo condenó a sufrir tres meses de cárcel y al pago de las costas.

■ Se alega que la corte inferior erró al creer a los testigos del Pueblo, no obstante las contradicciones fundamentales en que incurrieron, y al concluir que un ciudadano puede ser arrestado en su propia casa a las tres de la mañana, sin orden de allanamiento ni de arresto, y sin haberse demostrado que la persona arrestada haya cometido un delito grave.

Tres son los testigos que declararon en este caso: Andrés Torres y Rosario Polanco para sostener la acusación y Paula Jiménez como testigo de la defensa. El policía insular Andrés Torres comienza su declaración en la siguiente forma:

"Estaba de servicio nocturno esa noche y a las dos de la mañana se presentó un carro al Consultorio del Dr. Quiñones, con un hombre herido, y subí arriba e investigué, y resulta que este hombre . . .

"P. Lo que resulta no. ¿Llegó allí y vió a un hombre herido? Sí, señor.

"¿Quién era?—Saro **Polanco.**

"¿Y qué hizo Ud.?

"Llegué a la conclusión. . .

"Abogado Sr. Martínez Avilés: Que se elimine eso.

"Hon. Juez: Sí, elimínese."

Continúa declarando el testigo que salió para el barrio de Florida Afuera con el propósito de arrestar a Jenaro Rodríguez, que tocó a la puerta de su hogar y que la señora del acusado abrió la puerta, que le preguntó si se encontraba en la casa Jenaro Rodríguez, contestándole que no; que la señora le mandó a entrar para que viera que no estaba en la casa y que el acusado se encontraba escondido con un machete en la mano y al asomar la cabeza le tiró un machetazo que pudo evadir; que cuando vió al acusado ya estaba encima de él; que eso ocurrió como a las cuatro de la mañana, que el acusado le tiró el primer machetazo y no pudo tirar más porque se emburujó con él; que no pudo arrestarlo, pero que al otro día vinieron por la mañana y lo condujeron a la cárcel; que no le dió al acusado ni sabe que le hayan dado; que la señora le dijo que se asomara para que viera que su marido no estaba allí y que al asomarse le tiró el machetazo; que el machete dió en un virote y entonces el testigo agarró por los brazos al acusado; que iba uniformado y que el acusado lo vió con uniforme.

Rosario Polanco declara que en la madrugada del 24 de junio estuvo con el policía Torres en casa de Jenaro Rodríguez, a quien iban a arrestar; que el acusado había herido a un hermano del testigo; que el herido se encontraba en el hospital, en la Clínica del Dr. Quiñones; que el policía llegó a la casa de Jenaro Rodríguez y preguntó a la señora si éste se encontraba allí; que llamó y tocó y respondió la señora Paula; que abrieron la puerta y el policía preguntó si se podía entrar y le contestaron que sí, y que cuando el policía entró al cuarto salió Jenaro Rodríguez con un machete

tirándole machetazos; que la señora tenía una lámpara en la mano, la cual puso en una esquina cuando entró el policía; que Jenaro Rodríguez le tiró con el machete al policía, quien huyó para atrás; que el acusado le tiró varios machetazos al referido policía y que éste se defendía echándose para atrás. Paula Jiménez, esposa del acusado, declara que a las tres de la mañana llegó el guardia Torres y preguntó si estaba Jenaro; que la testigo le dijo que no; que el policía dió tres macanazos y dijo que abriera la puerta y que la obligó a abrir la puerta y se metió en el cuarto, debajo de la cama a buscar; que en eso llegó Jenaro y al decirle que lo venía a arrestar le dijo que lo perdonara, que a esa hora no podía ir; que entonces el guardia se tiró abajo e hizo dos disparos; que cuando Jenaro Rodríguez llegó a su casa el guardia estaba dentro, buscando debajo de la cama; que la testigo estaba allí con cuatro niñas; que ignora lo que le pasara a su esposo; que el policía no le hizo nada a su esposo, pero que lo buscó dentro de la casa y pidió que le abriera la puerta; que por la mañana fueron tres policías a buscar a su esposo y lo arrestaron; que tenía una daga en su casa y por la mañana, cuando llegó la policía, la cogió de detrás de la casa, de un mazo de leña que hendía.

A juicio de la defensa las contradicciones en que incurrieron los testigos de cargo Torres y Polanco son de tal naturaleza que hacen surgir necesariamente la conclusión de que dichos testigos no dijeron la verdad. Examinada detenidamente la prueba, puede decirse que sustancialmente estos testigos sólo discrepan en cuanto al número de machetazos que el acusado dirigiera contra el policía. Torres declara que el acusado no pudo tirarle más de un machetazo, mientras Polanco dice que fueron unos cuantos los machetazos que le tiró. Hay otros detalles, que carecen de importancia. Por ejemplo, se llama la atención a que el policía manifestó que pidió auxilio al guardia Polanco, a pesar de haber declarado que en aquel momento no había allí otro guardia más que él. Evidentemente el testigo se refirió a su

acompañante, el hermano del herido, Rosario Polanco, a quien llamó guardia por equivocación.

La esposa del acusado declara que Jenaro le dijo al policía que lo perdonara, que a esa hora no podía ir, y que entonces el policía se tiró abajo e hizo dos disparos. Confiesa que el policía no le hizo nada a su esposo, pero que lo buscó dentro de la casa. La verdad es que el policía Torres tuvo que abandonar su propósito de arrestar en aquel momento a Jenaro Rodríguez y que hubo que utilizar tres policías para practicar, por la mañana, el arresto del acusado. La prueba de cargo demuestra que hubo resistencia. Paula Jiménez dice que su esposo llegó después, cuando el policía estaba dentro de la casa, pero no niega que acometiera con un machete al referido policía. No creemos que el tribunal inferior incurriera en manifiesto error al estimar como probado el hecho de que el acusado acometiese con un machete al referido policía.

En cuanto al arresto que dicho policía intentó llevar a cabo en la propia casa del acusado a las tres de la mañana sin orden de allanamiento ni de arresto y sin haberse demostrado que la persona arrestada hubiese cometido un delito grave, es cuestión que no se discute en los alegatos con la debida amplitud, pero que debe merecer de nuestra parte detenida consideración. La Ley Orgánica de Puerto Rico (Sec. 2, pár. 14) dispone que no se expedirá mandamiento de arresto o registro sino por motivo fundado, apoyado con juramento o afirmación y describiendo particularmente el lugar que ha de registrarse y las personas que han de ser detenidas o las cosas que deban ser embargadas. No prohibe esta disposición arrestos sin mandamiento, sino simplemente la expedición de un mandamiento sin causa justificada y sin la base de una declaración respaldada por un juramento o afirmación.

El artículo 116 del Código de Enjuiciamiento Criminal dispone que un oficial de orden público puede hacer un arresto en cumplimiento de una orden que le haya sido en-

tregada con tal fin o puede, sin una orden de arresto, detener una persona en los siguientes casos:

1. Por un delito público cometido o que se ha intentado cometer en su presencia.

2. Cuando la persona arrestada ha cometido *felony*, aunque no haya sido en su presencia.

3. Cuando en realidad se ha cometido un *felony* y él tiene motivos razonables para creer que la persona arrestada lo ha cometido.

4. En virtud de una denuncia fundada en causa razonable, de la perpetración de un *felony* por la persona arrestada.

5. Por la noche, cuando haya motivos razonables para creer que la persona arrestada ha cometido un *felony*.

No hay duda de que el arresto puede ser practicado de noche cuando el funcionario tiene motivos fundados para creer que se ha cometido un delito grave por la persona a quien se intenta arrestar. Las razones para abrigar esta creencia deben ser de tal naturaleza que puedan impresionar e influir en el ánimo de una persona prudente y cautelosa bajo las circunstancias. *People* v. *Ford,* 191 N. E. 315.

En el presente caso el policía Torres tuvo conocimiento de que Jenaro Rodríguez había herido a un hombre que ingresó en el hospital. No surge de la prueba el carácter de la herida ni las circunstancias bajo las cuales fué inferida. Cuando el policía parecía dispuesto a explicar, las interrupciones de los abogados desviaron su testimonio y no fué preguntado en ningún momento acerca de la información que tuvo para decidirse a llevar a cabo el arresto del acusado.

La Corte Suprema de California, en el caso de *Davis* v. *Pacific Telephone & Telegraph Co.,* 57 Pac. 764, se expresa así:

"No hay manifestación alguna con respecto a si el arresto se llevó a cabo en virtud de una orden o sin ella, y la presunción de ley es que un funcionario público ejecutó sus deberes y en este caso la presunción sería que el funcionario tenía un mandamiento, o que el delito fué cometido en su presencia. La alegación de la demanda es que el demandante fué acusado de un delito y en tal caso el demandante no puede ahora alegar que no fué acusado de un delito. Ha-

biéndosele imputado un delito y habiendo sido arrestado por un funcionario público sin alegarse nada en contrario, debe presumirse que el funcionario actuó bajo una orden de arresto.''

En el caso de *Lees* v. *Colgan,* 120 Cal. 262, 52 Pac. 502, el mismo tribunal, comentando el artículo 836 del Código Penal de California, equivalente al 116 de nuestro Código de Enjuiciamiento Criminal, se expresa así, después de copiar en parte las disposiciones de dicho artículo:

''En otras palabras, es el deber de un oficial de orden público arrestar bajo cualesquiera de las condiciones anteriormente expresadas. Ciertamente es su deber practicar un arresto cuando se ha cometido un delito en su presencia. Igualmente sería su deber arrestar cuando tiene un mandamiento válido ordenando el arresto. Sin embargo, de acuerdo con el estatuto citado, su deber para practicar un arresto bajo tales circunstancias no es mayor que cuando se ha cometido un *felony* y tiene causa razonable para creer que cierta persona lo ha cometido. Aquí, por necesidad, debe asumirse que el funcionario tenía causa razonable para practicar el arresto. No debe asumirse que él actuó sin una buena causa, y si él tenía esta buena causa para arrestar, su deber fué llevar a cabo el arresto.''

Éstos son los únicos casos que hemos encontrado sosteniendo que en ausencia de prueba en contrario debe prevalecer la presunción de que el oficial de orden público cumplió con su deber al practicar el arresto. En el tomo 3 de la obra ''California Jurisprudence'', pág. 120, se cita el caso de *Lees* v. *Colgan,* supra, y se dice que en ausencia de evidencia en contrario debe asumirse que el funcionario tenía causa razonable para llevar a cabo el arresto. No es necesario, sin embargo, resolver este punto en esta ocasión, porque, a nuestro juicio, la prueba demuestra que, aun en el supuesto de que el arresto hubiese sido ilegal, el acusado acometió innecesariamente al policía Torres. El derecho de una persona para resistir un arresto ilegal no es ilimitado. Si bien es cierto que una persona a quien se intenta arrestar ilegalmente puede usar fuerza proporcionada para resistir el arresto, sin embargo, si los medios que usa para evitar su detención son des-

proporcionados, tal resistencia resulta ilegal. 2 R.C.L. 474; *Porter* v. *State,* 124 Ga. 297, 2 L.R.A. (N.S.) 730.

En el presente caso, de acuerdo con la declaración del policía, que fué creída por la corte inferior, el acusado, que estaba escondido, le tiró un machetazo al asomar la cabeza, que pudo evadir. El machete dió en un *virote* y entonces Torres se abalanzó sobre el acusado para evitar que siguiera tirándole. El policía penetró en la casa con el consentimiento de la esposa y no se ha demostrado que tratara de ejercer violencia alguna en la persona del acusado para ejecutar el arresto. La prueba demuestra que el acometimiento no estuvo justificado. En estas circunstancias no es posible llegar a la conclusión de que la corte inferior incurriera en error al declarar a Jenaro Rodríguez culpable del delito de acometimiento que le fué imputado.

*Debe confirmarse la sentencia apelada.*