[Civ. No. 22445.   Second Dist., Div. One.   Oct. 17, 1957.]

BEARTIES FOBBS et al., Appellants, v. CITY OF LOS ANGELES et al., Defendants; R. CONRAD et al., Respondents.

Walter W. Osterman for Appellants.

Roger Arnebergh, City Attorney, and Stephen R. Powers, Jr., Deputy City Attorney, for Respondents.

FOURT, J.—Plaintiffs brought an action against the city of Los Angeles, the chief of police and three policemen of the city for damages allegedly resulting from injuries sustained in certain assaults and batteries inflicted by the three policemen. Demurrers were sustained as to the city and the chief of police, and the cause proceeded against the three policemen. Each of the three policemen filed a cross-complaint against Fobbs and Taylor for damages allegedly sustained by them because of certain batteries inflicted upon each of them by Fobbs and Taylor.

The judgment has been brought before this court on its own motion to augment the record, because it was impossible to determine from a reading of the appellants' briefs what was decided in the trial court. The judgment on the complaint was in favor of the policemen and against Fobbs and Taylor. The judgment on the cross-complaint by the policemen was in favor of Fobbs and Taylor and against the policemen. In other words, the jury decided that neither side should recover from the other, and left all of the parties where they were before the lawsuits were filed.

Conrad, Coleman and Chittenden were police officers of the city of Los Angeles, on duty as such on May 23, 1954, the day of the alleged assaults and batteries. Chittenden and Coleman were on duty as uniformed patrol officers, working in a radio equipped car on the night watch. While so engaged they observed Fobbs commit a traffic violation and thereupon stopped him and gave him a traffic citation. Shortly after the traffic citation had been delivered to Fobbs, but after Fobbs had driven away, it was noticed that Chittenden had given Fobbs the court's copy of the citation, rather than the proper one. Immediately upon discovery of the error the officers drove to the house at the address given by Fobbs as his residence for the purposes of giving Fobbs the proper copy of the citation and of picking up the copy which had erroneously been given to him.

The facility where Fobbs lived was upstairs in the rear at 1651 East 48th Street, Los Angeles. The two officers went up the stairs, opened the screen door and knocked on the main door. Fobbs opened the door and was advised by Officer Chit-

tenden that a mistake had been made in giving him the court's copy of the citation, and that they were there for the purposes of giving him the proper copy and of picking up the copy which had been given to him, or in other words, to exchange the copies. Fobbs refused Chittenden's offer to so exchange. Officer Coleman then took the citation from Chittenden's hand and started to extend his own hand with the citation in it toward Fobbs, at the same time saying, "All you have to . . ." At that very moment Fobbs struck Coleman in the mouth quite hard with his clenched right fist. Coleman grabbed one of Fobbs' shoulders and a portion of the clothing in the area of his other shoulder, pushing Fobbs backward and grappling with him across the living room into an adjacent bedroom, where their respective holds were broken when they struck a bed post. Coleman stated to Fobbs about that time, "All right, now, you are under arrest." Fobbs replied, "What for?" Chittenden, who had followed the grapplers into the bedroom, answered by saying, "For hitting my partner in the mouth." Coleman then stated to Fobbs, "Come on. Let's go," and reached for his arm. At the same time Chittenden grabbed the other arm of Fobbs. Fobbs jerked away and said, "I am not going anywhere. I haven't done anything," and threw himself back upon the bed. As the officers attempted to come near Fobbs he kicked violently and flailed his arms.

About that time Taylor, the mother of Fobbs, came into the bedroom and inquired, "What's happening? What has my boy done? What are you doing to him?" As Chittenden's attention was momentarily directed toward Taylor, he was kicked in the stomach and lower groin by Fobbs, and thereby propelled backward into or against a baby crib, smashing the same. Taylor stated, "What did he do? Don't take him. Don't take him. What did he do?" Coleman explained to her that Fobbs was under arrest and that he was being taken to jail, further stating to her, "You can't help with the matter, lady. Please leave, because you are interfering with a legal arrest." At that moment she jumped onto the bed saying, "Oh, don't take my boy. Don't take my boy. He hasn't done anything," and got herself into a position where she was on top of Fobbs, her back to his stomach, with his arms partly around her at times. For 10 minutes or so the officers attempted to get Taylor off of Fobbs, explaining to her that she was interfering with an arrest, and that if she continued to do so she too would be arrested and taken to jail. During the struggle both Fobbs and Taylor kicked violently

and once Fobbs got Chittenden's thumb and forefinger and bent them backward, forcing him to release Taylor momentarily. During the struggle between Officers Coleman and Chittenden on the one side and Fobbs and his mother on the other, two other officers, Conrad and Northrup came into the bedroom as reinforcements, and started to assist their brother officers. Northrup, with Coleman and Chittenden, removed Taylor from the bed and handcuffed her. Conrad got onto the bed and put a handcuff on the right wrist of Fobbs and was then kicked in the leg by Fobbs, causing Conrad to release his hold and drop to his hands and knees as a matter of self defense. Coleman then came to the assistance of Conrad, and together they put Fobbs on his stomach and handcuffed him. Fobbs was taken by Northrup and Conrad, and Taylor was taken by two uniformed officers to a police station, where each was booked.

Fobbs and Taylor were charged with violating section 242 of the Penal Code in three counts, in that they committed a battery upon Conrad, Coleman and Chittenden, and with violating the provisions of section 415 of the Penal Code by disturbing the peace. A jury found the defendants, in such criminal cases, not guilty as to all counts.

Section 836 of the Penal Code provides in part:

"A peace-officer may . . . without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence."

Many cases have interpreted the section above quoted and all are to the effect that an officer has the right to make an arrest without a warrant for a misdemeanor committed or attempted in the officer's presence. (*Lees* v. *Colgan,* 120 Cal. 262, 268-269 [52 P. 502, 40 L.R.A. 355]; *In re Emmett,* 120 Cal.App. 349, 353 [7 P.2d 1096]; *People* v. *Young,* 136 Cal. App. 699, 703 [29 P.2d 440]; *People* v. *Cupp,* 77 Cal.App. 472, 476 [246 P. 1085]; *People* v. *Craig,* 152 Cal. 42, 45 [91 P. 997]; *Coverstone* v. *Davies,* 38 Cal.2d 315, 319-320 [239 P.2d 876].)

Indeed, it is the duty of the officer to do so. As stated in *Lees* v. *Colgan, supra,* 120 Cal. 262, at page 269, after setting forth the provisions of section 836 of the Penal Code: "In other words, it is the duty of the peace officer to make arrests under any of the foregoing conditions. It certainly would be his duty to make an arrest where a public offense was committed in his presence."

■ The facts as heretofore related show clearly that the crime of battery was committed in the presence of Coleman and Chittenden. (*People* v. *Bugg,* 79 Cal.App.2d 174 [179 P.2d 346].) Both officers, in the first instance, were in uniform, standing on the front porch of Fobbs' residence, engaged in a lawful pursuit, when Fobbs, without any provocation, hit Coleman in the mouth. Almost immediately thereafter, Fobbs was put under arrest and was told why such was the case. Having been lawfully arrested, it was the duty of those arrested to submit peaceably. (*People* v. *Hardwick,* 204 Cal. 582, 585-586 [269 P. 427, 59 A.L.R. 1480].)

The cases hereinafter referred to, cited by appellants as sustaining their contentions, are not in point. In *Dragna* v. *White,* 45 Cal.2d 469, 471 [289 P.2d 428], the court simply said, "A police officer who makes an arrest without a warrant and *without justification* may be held civilly liable for false arrest and imprisonment." (Emphasis added.) The distinction is apparent. In *Miller* v. *Glass,* 44 Cal.2d 359, 360 [282 P.2d 501], which was an action for false arrest and imprisonment, the court said: "The sole issue in controversy is whether plaintiff's complaint stated a cause of action," and went on further to relate (p. 362) that "Different principles govern actions for false arrest and imprisonment, for the law expressly limits the arresting officer's authority." The court further pointed out that, "When the arrest is without a warrant, the misdemeanor must have been 'committed or attempted in his presence.' " We are not involved in this instance with a false arrest and imprisonment case, but rather with one for the injuries and damages suffered from an alleged battery. *Hughes* v. *Oreb,* 36 Cal.2d 854 [228 P.2d 550], was an action to recover damages for false imprisonment. The court simply held that the record in that case did not show, as a matter of law, that the officer had reasonable cause for making the arrest. There is no such issue in the case at hand. *Boyes* v. *Evans,* 14 Cal.App.2d 472 [58 P.2d 922], was an action for damages for personal injuries received in a beating administered by an officer. The court sustained the judgment for the plaintiff upon evidence that showed certainly that the officer had, without any provocation, beaten the plaintiff, saying, among other things (at p. 479):

"A narcotic inspector or peace officer who commits an unprovoked assault and battery on an individual without cause in apprehending him without a warrant on suspicion or upon mere information that the accused may be guilty of a mis-

demeanor becomes a trespasser and is liable as such for the injuries inflicted. Ordinarily an officer has no legal right to attempt to make an arrest for a misdemeanor on suspicion or even on mere information of another person without first procuring a warrant therefor.'' This is not the case before us. In *People* v. *Perry*, 79 Cal.App.2d Supp. 906 [180 P.2d 465], the court found no evidence to show that the victim had committed any violation or any offense and accordingly ruled that the officer had no power to make the arrest for a misdemeanor without a warrant, and further that as a consequence, the victim could resist such an arrest. In the case engaging our attention, it will be remembered that a reasonable and logical request was in the process of being made to Fobbs by one of the policemen when Fobbs suddenly, and without provocation, hit him in the mouth. The arrest came shortly thereafter, and properly so.

The facts in this case show that there was no unnecessary or excessive force in making the arrest. In fact the evidence shows that the two officers, in the first instance, were unable, by themselves, to cope with the situation without using extreme force, and that instead of using such force they exercised considerable restraint in calling for help.

Several other citations are mentioned in the appellants' briefs, such as *McAlmond* v. *Trippel*, 93 Cal.App. 584 [269 P. 937], *Peckham* v. *Warner Bros. Pictures, Inc.*, 42 Cal. App.2d 187 [108 P.2d 699], *Wallace* v. *Kerr*, 42 Cal.App.2d 182 [108 P.2d 754] and *Gallen* v. *Poulou*, 140 Cal.App.2d 638 [295 P.2d 958], but in our opinion none of such cases is in any wise in point with reference to the problems involved here.

The next contention of the appellants is that the instructions offered were not proper. Counsel has failed to point out wherein such instructions are improper. We have gone over the record and find no error in the giving or refusing of any instructions.

Appellants' last contention, in substance, is that because of the previous acquittal of Fobbs and Taylor in the criminal trial in which they were defendants, the court in the civil trial now under consideration had no right or jurisdiction to do anything other than to ''hear what damage Fobbs and his mother had suffered,'' and that the court had no jurisdiction to find in favor of the defendants in this case, that any such a

judgment or finding was "a collateral attack on a valid jury verdict and a nullity." To state the contention is enough to refute it.

The judgment is affirmed.

White, P. J., and Drapeau, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 11, 1957.

---

*Assigned by Chairman of Judicial Council.