[Civ. No. 4133. Fifth Dist. Dec. 21, 1978.]

In re ALONZO C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Appellant, v.
ALONZO C., Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General,

Willard F. Jones and William George Prahl, Deputy Attorneys General, for Plaintiff and Appellant.

Willard L. Weddell, Public Defender, and Gary A. Ingle, Deputy Public Defender, for Defendant and Respondent.

## OPINION

HOPPER, J.—Police officers, including Officers Beltran and Emerson of the Wasco Police Department, responded to a call regarding several juveniles who were allegedly sniffing glue or paint in the alley in the 1100 block of E Street in Wasco. When Officer Beltran arrived at the alley, he saw a group of several young boys in one of the back yards which faced the alley. Some of the boys were sitting, some standing, and some were leaning on the fence. As the officers approached, the boys ran away.

Respondent Alonzo C. (Alonzo) ran toward Officer Beltran's patrol car and the officer got out of his car and apprehended Alonzo. Officer Beltran could smell an odor of paint on Alonzo's breath. Alonzo also had traces of silver paint in his nostrils and on his hands.

Officer Emerson told Officer Beltran that Alonzo had thrown some clothing down as he ran. Officer Beltran returned to the yard where the boys had been and found three spray cans and a Rustoleum can. Each paint can contained silver paint. In addition, the officers found four socks containing silver paint. The officers also found a radio in the area where the boys had been which matched the description of a radio which had been taken from the home of Joe Montecino during a recent burglary.

Before transporting Alonzo to the police station, Officer Beltran placed him under arrest for having violated Penal Code section 381. Officer Beltran did not actually see Alonzo putting a sock to his mouth, nor did he see him sniffing anything.

After arresting Alonzo, Officer Beltran patted him down and found a knife and two .22-caliber bullets which had been taken from the Montecino home during a burglary on April 3, 1978. Alonzo was taken to the police station and advised of his rights and admitted sniffing the paint.

Later, the officers obtained a warrant for the search of the residence in the back yard of which the minors had been sniffing paint. As a result of that search, the officers recovered additional property which had been taken during the Montecino burglary.

A three-count petition was filed in the Kern County Juvenile Court pursuant to Welfare and Institutions Code section 602, alleging violations of Penal Code sections 496 (receiving stolen property), 381 (sniffing of poisonous fumes), and 459 (burglary). In juvenile court, Alonzo moved to suppress the evidence seized from him and from the residence. That motion to suppress was granted on the grounds that the arrest of Alonzo was invalid and that the seized evidence·was the product of that invalid arrest. The People appeal from the subsequent dismissal of the petition.

Welfare and Institutions Code section 625.1 provides in relevant part: "A peace officer may, without a warrant, take a minor under the age of 18 into temporary custody as a person described in Section 602: (a) Whenever the officer has reasonable cause to believe that the minor has committed a public offense in his presence. . . ."[1]

Penal Code section 381 provides: "Any person who willfully ingests, inhales, or breathes the fumes of any poison as defined in Schedule D of Section 4160 of the Business and Professions Code with intent to become intoxicated is guilty of a misdemeanor."

■ To constitute a violation of Penal Code section 381, the defendant must (1) willfully (2) ingest, inhale or breathe the fumes of any poison as defined in Business and Professions Code section 4160, schedule D (3) with intent to become intoxicated. (See discussion in Review of Selected 1967 Code Legislation (Cont.Ed.Bar 1967) p. 150.)

■ Our Supreme Court, in *In re Thierry S.* (1977) 19 Cal.3d 727 [139 Cal.Rptr. 708, 566 P.2d 610], held that under Welfare and Institutions Code section 625.1 a police officer, without a warrant, is authorized to arrest a minor for a misdemeanor only if the officer has reasonable cause to believe that the misdemeanor was committed in the officer's presence. (See also *In re John C.* (1978) 80 Cal.App.3d 814, 821, fn. 5 [145 Cal.Rptr. 228].) A warrant is required before a minor may be arrested or taken into temporary custody based on the alleged commission of a misdemeanor outside the presence of the arresting officer.

---

[1]This is the same language as is found in Penal Code section 836, subdivision 1.

■ Here we face the question of whether or not there was reasonable cause to believe that a violation of Penal Code section 381 was committed in the presence of the officer. We conclude that the juvenile judge was correct in holding that the officer had no such reasonable cause in this case; that lack of compliance with the warrant requirement tainted essential evidence; and that the matter was properly dismissed.

We do not agree with the contention of appellant that the test is whether circumstances exist that would cause a reasonable person to believe a crime had been committed. Such is the rule as to felonies, but not to misdemeanors. Rather, the correct test for misdemeanors is whether circumstances exist that would cause a reasonable person to believe a crime has been committed *in his presence.* This distinction between felonies, where the offense need not be committed in the presence of the officer to justify a warrantless arrest, and misdemeanors, where the offense must be committed in the presence of the officer, has been followed by case law in California for many years as to adults and was made applicable to minors by the enactment of Welfare and Institutions Code section 625.1 as interpreted by *In re Thierry S.* To construe Welfare and Institutions Code section 625.1 (or its Penal Code counterpart) to not require the act to take place in the presence of the officer would destroy the design of the statute and make the term meaningless.

■ The term "in his presence" is liberally construed. (*People* v. *Lavender* (1934) 137 Cal.App. 582, 586-589 [31 P.2d 439]; *McDonald* v. *Justice Court* (1967) 249 Cal.App.2d 960, 963 [58 Cal.Rptr. 29].) The acts must become known to the officer through the sensory perceptions of the officer. The test is whether the misdemeanor "is apparent to the officer's senses." (*People* v. *Brown* (1955) 45 Cal.2d 640, 642 [290 P.2d 528].) Any and all of the senses are included. (*People* v. *Bock Leung Chew* (1956) 142 Cal.App.2d 400, 403 [298 P.2d 118] (possession of narcotic, yen shee, shown by *smell*); *People* v. *Cahill* (1958) 163 Cal.App. 15 [328 P.2d 995] (*hearing* over the telephone a proposition to engage in prostitution); *People* v. *Lewis* (1963) 214 Cal.App.2d 799 [29 Cal.Rptr. 825] (*hearing* over a radio transmitter); *Roynon* v. *Battin* (1942) 55 Cal.App.2d 861 [132 P.2d 266] (*telescopic observation* of fish and game laws violation).) Mere suspicion is insufficient. Likewise, it is insufficient cause to arrest for a misdemeanor outside of the officer's presence (which is often the case). The only recourse in such event is to seek a warrant.

The question of reasonable cause to believe that a misdemeanor is taking place in the officer's presence is measured by the events observable to the officer at the time of the arrest. If the officer cannot testify, based on his or her senses, to acts which constitute every material element of the misdemeanor, it cannot be said that the officer has reasonable cause to believe that the misdemeanor was committed *in his presence.* (See *People v. Garrison* (1961) 189 Cal.App.2d 549 [11 Cal.Rptr. 398]; see also *Fobbs v. City of Los Angeles* (1957) 154 Cal.App.2d 464, 468 [316 P.2d 668].)

The Legislature has set out a statutory exception in the case of violation of Vehicle Code section 23102 (driving under the influence of intoxicating liquor). Vehicle Code section 40300.5 provides: "Notwithstanding any other provision of law a peace officer may, without a warrant, arrest a person involved in a traffic accident when the officer has reasonable cause to believe that such person had been driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug." The identical provision as to minors appears in Welfare and Institutions Code section 625.1, subdivision (d). From time to time proposals, not yet adopted, have been made for additional exceptions (see ALI Model Code of Pre-Arraignment Procedure, tent. draft No. 1 (1966) § 3.01; see also Uniform Arrest Act, § 6, discussed in Warner, *The Uniform Arrest Act* (1942) 28 Va.L.Rev. 315, 331-332; see also the Commission for Revision of the Penal Code in The Criminal Procedure Code (staff draft 1974) § 3152(a)(3) which would enlarge the power of arrest to include reasonable cause to believe that the person arrested has committed the offense even though it was not in the officer's presence if it is at least a misdemeanor of the first degree as defined). Many of such proposals would in effect eliminate the present distinction between felonies and some misdemeanors now made by Penal Code section 836. Nothing in cases such as *Coverstone v. Davies* (1952) 38 Cal.2d 315 [239 P.2d 876] (cert. den., *sub. nom. Mock* v. *Davies* (1952) 344 U.S. 840 [97 L.Ed. 653, 73 S.Ct. 50] eliminates the *in the presence* requirement. In *Coverstone* the unlawful act (assembly to view a "hot-rod" race) was still being committed.[2] On the other hand, in *In re Thierry S.,* the officer saw

---

[2]Neither the majority nor minority in *Coverstone* expressly dealt with all of the elements of the offense of unlawful assembly (see *In re Brown* (1973) 9 Cal.3d 612, 623 [108 Cal.Rptr. 465, 510 P.2d 1017]). *Coverstone* does not hold that an arrest can be made when the offense is not committed in the presence of the officer. Such a ruling would have done violence to the statute. In addition, from one standpoint, *Coverstone* is really a case involving a determination of who were parties to the offense (see *Miller* v. *Glass* (1955) 44 Cal.2d 359, 363 [282 P.2d 501]; for another example showing how the officer could reasonably believe that a misdemeanor was taking place in his presence without being able to observe the actual perpetrator, see the illustration in *Packer* v. *Sillas* (1976) 57

or heard nothing relating to the actual commission of the particular offense (vandalism) in his presence.

Even before the 1957 amendment to Penal Code section 836, subdivision 1, using the language "reasonable belief," the courts read such language into the statute (see *Packer* v. *Sillas, supra,* 57 Cal.App.3d 206, 212, and cases cited).

In the final analysis, there is no exact formula in warrantless arrests for misdemeanors because each arrest has different facts and circumstances and each crime has different elements. Nevertheless, some guidelines, albeit overlapping, can be gleaned from the authorities. ■ In summary, it can be said that a misdemeanor is committed in the presence of an officer authorizing an arrest without a warrant pursuant to Welfare and Institutions Code section 625.1 (and *its* Penal Code section counterpart, § 836, subd. 1) when *all* of the following conditions exist:

(1) The officer can testify to every element of the particular misdemeanor offense by referring to specific and articulable observable facts and circumstances occurring within the range of the officer's senses (enhanced or aided, in any given case, by the use of technological devices permitted under the law) which, when taken together with rational inferences from those observable facts set forth *all* of the elements of the misdemeanor;

(2) The officer observes all of the elements of the misdemeanor prior to the arrest;

(3) The officer subjectively and reasonably believes that the misdemeanor took place in his or her presence;

(4) A reasonable person in the same position of the officer and possessing the prior experience and specialized training of the officer would objectively believe that the offense was taking place in his or her presence;

(5) The totality of the circumstances is such that an officer would be justified in making a complaint upon which a warrant might issue.

Cal.App.3d 206, 216-217 [128 Cal.Rptr. 907]) which offense required being "present at the place" of an unlawful assembly and assembled "to do" an unlawful act.

Some misdemeanors (such as Pen. Code, § 381) are static in nature in the sense that they do not necessarily continue after the acts constituting the offense are completed. Others (such as Pen. Code, § 647, subd. (f) (in a public place under the influence of alcohol, drugs, etc.)) make unlawful a condition which takes place after, and continues after, the physical act of ingestion required to produce the later condition. Thus, the offense of Penal Code section 381 is ended after the sniffing of the poisonous fumes with the required intent taking place. On the other hand, when the act of sniffing (which could take place outside of the presence of the officer) is terminated, the actor can, in the particular instance (depending upon such circumstances as the passage of time, biological factors, the amount ingested and the like) be in violation of Penal Code section 647, subdivision (f), if the actor is in a public place. Consequently, a defendant may have sniffed paint or glue under the conditions in which all of the elements of Penal Code section 381 are present, but all of those elements take place other than *in the presence* of an officer, even though the effects or results of the sniffing are thereafter immediately apparent to the officer. This is not the same as the officer observing the acts which constitute a violation of Penal Code section 381.

Applying the rules discussed above to the case before us, we can find no justification in the record for the arrest of Alonzo. Alonzo was one of several boys in the back yard who ran when the officers arrived. There is nothing in the record to show any commission of Penal Code section 381 in the presence of the officers. There is no evidence in the record that the officers observed activity constituting a violation of Penal Code section 381 within the range of their senses. Nor has appellant pointed to any specific and articulable facts showing that the boys were doing anything other than standing, sitting, or leaning on the fence prior to their running. The mere fact that Alonzo had paint on his face and an odor of paint and had dropped the sock saturated with paint only shows that at sometime in the past Alonzo had undoubtedly been sniffing, but the time of any sniffing is not established. No evidence exists in the record to show from the observable facts that anyone was ingesting the fumes at the time the officers arrived. While the officer may have had reasonable cause to believe that Alonzo had violated Penal Code section 381, the officer did not have reasonable cause to believe that that misdemeanor took place *in his presence*. Conceivably, Alonzo may have been under the influence, and thus violating Penal Code section 647, subdivision (f), since the alley was a public place, but evidence was not produced on that charge or on the dissipation rate of paint or its fumes. In light of the apparent widespread use of glue or paint for sniffing purposes and its dangerous

consequences, the Legislature should probably consider removing the "under the influence of toluene, etc." language from Penal Code section 647, subdivision (f), and incorporating that language into Penal Code section 381 without the present limitation to public places. Another alternative would be to eliminate the "in the presence of" clause as applied to Penal Code section 381 by setting out carefully drawn circumstances under which an arrest could be made for a violation of Penal Code section 381, even though not in the presence of the officer, such as was drafted by the Legislature in limited circumstances for Vehicle Code section 23102 violations. Such an amendment would reduce the difficulties faced by officers in enforcing the provisions of Penal Code section 381.[3]

Under the circumstances of the instant case, as shown by the record here, the trial court correctly concluded that the misdemeanor offense of Penal Code section 381 was not committed in the presence of the officer. The burden was on the prosecution to show proper justification for the arrest. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Ferguson* (1963) 214 Cal.App.2d 772, 775 [29 Cal.Rptr. 691].) The prosecution has not met that burden. The arrest was invalid and the fruits of the subsequent search were properly suppressed.

The judgment is affirmed.

Franson, Acting P. J., and Vilas, J.,* concurred.

---

[3]Legislation has already taken place as to juveniles. Welfare and Institutions Code section 625.1 was repealed effective January 1, 1979. (Stats. 1978, ch. 1372, No. 11 West's Cal. Legis. Service, § 1, p. 4804, No. 8 Deering's Adv. Legis. Service § 1, p. 507.)

*Assigned by the Chairperson of the Judicial Council.