Filed 5/19/26  P. v. Grayes CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>LASHAY CHANNEL GRAYES,<br><br>　　Defendant and Appellant. | E083879<br><br>(Super.Ct.No. FWV22003252)<br><br>**ORDER MODIFYING OPINION**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The opinion filed in this matter on May 8, 2026, is modified as follows:

On page 1, the name of the trial court judge is added to the existing sentencing judge's name, to read as follows:

Shannon L. Faherty (trial judge) and Michael A. Camber (sentencing judge), Judges.

This modification does not change the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS                              
                                 J.

We concur:

RAMIREZ                 
                P. J.


RAPHAEL              
                J.


2

Filed 5/8/26  P. v. Grayes CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083879 |
| v. | (Super.Ct.No. FWV22003252) |
| LASHAY CHANNEL GRAYES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Camber, Judge.  Reversed with directions.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

In February 2022, police officers were dispatched to a medical office to respond to a report of vandalism. When the officers arrived at the scene, they encountered defendant and appellant Lashay Channel Grayes, and a physical altercation ensued when the officers attempted to arrest defendant. As a result of this incident, defendant was convicted by a jury of one count of obstructing or resisting an executive officer (count 1; Pen. Code, § 69)[1] and one count of resisting, obstructing, or delaying a peace officer (count 2; § 148, subd. (a)).

Defendant appeals, arguing that the evidence at trial was insufficient to show that officers were lawfully performing a duty at the time of her arrest based upon the instructions given by the trial court. In supplemental briefing, defendant also argues that the jury instructions themselves were prejudicially erroneous. We agree the instructions given were prejudicially erroneous requiring reversal. We further conclude that defendant has not met her burden to show insufficient evidence to support a verdict had the jury been properly instructed. Thus, the People are not barred from retrying defendant upon remand.

# II. BACKGROUND

## A. *Facts and Charges*

On the morning of February 25, 2022, defendant became involved in an altercation with police officers when they attempted to arrest her for damaging property at a medical

---

[1] Undesignated statutory references are to the Penal Code.

office. As a result of this incident, defendant was charged with one count of obstructing or resisting an executive officer (count 1; § 69); one count of resisting, obstructing, or delaying a peace officer (count 2; § 148, subd. (a)); and one count of misdemeanor vandalism (count 3; §594, subd. (b)(2)(A)). The information also alleged circumstances in aggravation pursuant to section 1170, subdivision (b)(2).

B. *Relevant Evidence at Trial*

Two police officers testified at trial. One officer testified that on the morning of February 25, 2022, she was dispatched to a medical office. Upon entering the medical office, she saw defendant "standing at the counter and some plexiglass broken on the floor," and defendant had "her phone out recording, trying to see something towards the back, and there [were] no employees visible to the front." The officer's partner proceeded to speak with the medical office staff, while the officer initiated contact with defendant. During this conversation, defendant stated she was at the medical office to obtain documents and admitted removing the plexiglass because she wanted to speak with someone inside the medical office.

The second officer testified that in the morning of February 25, 2022, he was dispatched to a medical office in response to a report of vandalism. He arrived at the medical office with his partner and observed defendant "standing," "leaning on the desk, and recording [the officers]." His partner proceeded to communicate with defendant while he entered the interior of the medical office to speak with the staff. The medical office staff accused defendant of breaking the plexiglass and threatening to fight them. Based upon his discussion with the medical office staff, he made the decision to arrest

defendant.

Both officers testified that, as they were attempting to arrest defendant, defendant refused to cooperate, and a physical altercation ensued. The physical altercation began before the officers verbally informed defendant of their intent to arrest her. Both officers also testified that they sustained physical injuries as a result of this encounter with defendant. Video footage of the entire incident captured by one of the officer's body-worn cameras was also played for the jury.

Witnesses from the medical office failed to appear to testify at trial. As a result, the misdemeanor vandalism charge (count 3; § 594, subd. (a)), as well as the allegations of circumstances in aggravation (§ 1170, subd. (b)(2)), were dismissed.

C. *Jury Instructions, Verdict, and Sentence*

The jury was instructed pursuant to the pattern jury instructions for counts 1 and 2, which informed the jury that it was required to find that the police officers were lawfully performing a duty at the time defendant allegedly resisted in violation of sections 69 and 148, subdivision (a). However, the trial court omitted the portions of the pattern instruction that defined lawful performance of duty.[2] Instead, the trial court provided a

---

[2] The pattern instructions include the following: "A peace officer is not lawfully performing his or her duties if he or she is (unlawfully arresting or detaining someone/ [or] using unreasonable or excessive force when making or attempting to make an otherwise lawful arrest or detention)." (CALCRIM 2670.) The pattern instructions further provide specific definitions for lawful performance of duty intended to be given based upon the circumstances of the case. (*Ibid.*) These circumstances include: detentions, arrests, arrests in the case of misdemeanors, arrests without a warrant, and

modified instruction that simply explained that an excessive use of force during an arrest would render the arrest unlawful, without explaining what would constitute a lawful arrest in the first instance.

During deliberation, the jury asked multiple questions seeking clarification on the jury instructions. One question sought to clarify the requirements for a lawful arrest. As a result, the trial court gave a supplemental instruction stating, in part: "The officer must tell that person that the officer intends to arrest her, why the arrest is being made, and the authority for the arrest. The Officer does not have to tell the arrested person these things if the Officer has probable cause to believe that the person is committing or attempting to commit a crime, is fleeing immediately after having committed a crime, or has escaped from custody." However, in response to this supplemental instruction, the jury requested further clarification by asking whether probable cause to believe the defendant "is committing or attempting to commit a crime" required the officers "to witness the actual crime . . . to have probable cause for an arrest." Over the prosecutor's objection, the trial court decided to give a further supplemental instruction stating: "In order for an Officer to lawfully arrest someone without a warrant for a vandalism, the officer must have probable cause to believe that the person to be arrested committed a vandalism in the Officer's presence."

---

entering a home without a warrant. (*Ibid.*) The trial court in this case did not provide the jury with any of these definitions.

The jury found defendant guilty of obstructing or resisting an executive officer (count 1; § 69) and resisting, obstructing, or delaying a peace officer (count 2, § 148, subd. (a)); and the trial court sentenced defendant to formal supervised probation for two years.

## III. DISCUSSION

### A. *Instructional Error*

We first address the claim of instructional error. In supplemental briefing, defendant contends that the trial court erred by failing to "instruct the jury regarding unlawful detention or unlawful arrest, both bracketed sections of CALCRIM No. 2670 giving rise to a sua sponte duty on the trial court to instruct." We agree.

#### 1. The Initial Instructions to the Jury Were Erroneous

"All criminal defendants have the right to 'a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) Thus, "[t]he trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*Ibid.*) "A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Similarly, if the trial court decides to provide supplemental instruction to the jury during deliberation, " '[w]e review de novo the legal accuracy of any supplemental instructions provided.' " (*People v. Parker* (2025) 113 Cal.App.5th 1261, 1271.)

6

In this case, defendant was charged with violation sections 69 and 148. "Section 69 provides that '[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law . . . is punishable by a fine . . . or by imprisonment . . . .' " (*People v. Hupp* (2023) 96 Cal.App.5th 946, 950; § 69.) Similarly, "section 148, subdivision (a)(1) prohibits resisting an officer in the performance of duty, though the resistance need not be forceful or violent." (*In re A.L.* (2019) 38 Cal.App.5th 15, 22; § 148, subd. (a)(1).) The lawfulness of an officer's conduct is an essential element of both offenses because there is "no distinction between performing a duty and lawfully performing a duty, since an officer who is acting unlawfully cannot be said to be performing his or her duty." (*In re A.L.*, at p. 25.) And the prosecution has the burden of proving the lawfulness of the officers' conduct beyond a reasonable doubt. (*People v. Southard* (2021) 62 Cal.App.5th 424, 435.) Thus, the lawfulness of the officers' conduct is an essential element upon which the trial court had a sua sponte duty to properly instruct the jury.[3]

Here, to convict defendant of a violation of section 69 or 148, the prosecution was required to prove, and the jury was required to find, that officers were engaged in the lawful performance of their duties. The pattern jury instructions include definitions for various scenarios in which an officer can be considered engaged in a lawful performance

---

[3] Because the instructional error in this case involved an essential element of the offenses for which defendant was charged and convicted, we disagree with the People's argument that defendant forfeited any claim of instructional error by failing to object at the time of trial.

of duty, including during a detention, an arrest without a warrant, and an arrest for a misdemeanor offense. (CALCRIM 2670.) However, the trial court did not give any of these definitions to the jury. Nor did the trial court offer its own definition for the jury to consider. In essence, the trial court instructed the jury that it was required to find that the officers were engaged in a lawful performance of duty but provided no definitions or guidance to the jury regarding how to make this finding. This was clearly error. (*People v. Serrano* (2022) 77 Cal.App.5th 902, 913 [Where a term or phrase has a special definition for purposes of a statute, the failure to define it for the jury is error.]; *People v. Reyes* (1992) 2 Cal.App.4th 1598, 1601 [Failure to define terms essential to an element of an offense is "equivalent to the omission of an element from the definition of the crime given to the jury."].)

   2.  The Supplemental Instructions Given Were Erroneous

In supplemental briefing, the People do not attempt to defend the correctness of the instructions initially given to the jury, arguing instead that any initial failure to properly instruct was "harmless because the trial court's answers to the jury's questions filled any ostensible instructional gaps." Defendant concedes that some of the supplemental instructions cured purported defects in the original instructions. We respectfully disagree with both parties.

The fundamental failure of the original instruction was the failure to define or explain what the jury needed to find in order to conclude that the prosecution had proved the officers were lawfully performing a duty at the time of any alleged obstruction or resistance. The only supplemental instruction that comes close to providing a definition

8

of lawful performance was the supplemental instruction stating: "In order for an Officer to lawfully arrest someone without a warrant for a vandalism, the officer must have probable cause to believe that the person to be arrested committed a vandalism in the Officer's presence."[4] As we explain, this supplemental definition was a misstatement of the law for multiple, independent reasons.

First, the supplemental instruction improperly limited the circumstances in which the jury could find lawful performance of duty to a lawful arrest. However, there was testimony to suggest that the physical altercation between defendant and the officers began before the officers could clearly communicate their intent to arrest defendant. Because the evidence at trial gives rise to disputed facts regarding when the physical altercation ensued, we agree with defendant that the instructions on lawful performance should have included a definition of both lawful detention and lawful arrest, and the supplemental instruction did not cure the failure to instruct on lawful detention.

Second, the supplemental instruction failed to properly define a lawful arrest. Specifically, section 836 provides that a peace officer may lawfully arrest a person without a warrant whenever: "(1) The officer has probable cause to believe that the

---

[4] The jury was also instructed: "The officer must tell that person that the officer intends to arrest her, why the arrest is being made, and the authority for the arrest. The Officer does not have to tell the arrested person these things if the Officer has probable cause to believe that the person is committing or attempting to commit a crime, is fleeing immediately after having committed a crime, or has escaped from custody." However, this instruction advises the jury only what an officer must communicate during the course of an arrest. It does not provide any guidance on whether an officer has grounds to lawfully arrest a person in the first instance.

9

person to be arrested has committed a public offense in the officer's presence[;] [¶] (2) The person arrested has committed a felony, although not in the officer's presence[;] [or] [¶] (3) The officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed."  (§ 836, subd. (a).)  Thus, the prosecution may normally prove the lawfulness of an arrest with evidence that any one of the scenarios set forth in section 836 existed at the time of arrest. However, the supplemental instruction given in this case improperly limited the definition of lawful arrest to circumstances in which a person has committed an offense in the officers' presence.

Third, the supplemental instruction improperly limited the lawfulness of an arrest to the commission of the specific crime of vandalism.  Section 836 provides that an officer may lawfully arrest a person if the officer has probable cause to believe the person has committed a public offense in the officer's presence.  (§ 836.)  The statute does not limit the lawfulness of an arrest to the commission of the specific crime for which a defendant is later charged.  The fact that a defendant is subsequently charged or held to answer only for a specific crime does not limit the circumstances under which the defendant's arrest can be considered lawful because a district attorney has discretion to decline to prosecute even where probable cause exists to believe a defendant has committed a crime (*People v. Lucas* (1995) 12 Cal.4th 415, 477; *People v. Spicer* (2015) 235 Cal.App.4th 1359, 1374), and "[e]vidence relevant on the issue of probable cause for arrest is not limited to that which would be admissible at trial on the issue of guilt" (*People v. Brice* (1965) 234 Cal.App.2d 258, 266).  Thus, there was no basis to limit the

10

jury to finding the lawfulness of an arrest only to circumstances in which the officers had probable cause to believe the specific crime of vandalism was committed in the officers' presence.

Finally, the supplemental instruction required the jury to find probable cause that defendant had committed a vandalism but failed to define probable cause or vandalism for the jury. Generally, the concept of probable cause must be defined for a jury. This is because "the question of reasonable or probable cause is ordinarily one for the court" and, where there are disputed facts to be resolved by a jury, " 'the jury is to be told that if it finds the facts in a designated way such facts do or do not amount to probable cause.' " (*Roberts v. City of Los Angeles* (1980) 109 Cal.App.3d 625, 629-630.) Consistent with this principle, the pattern instructions for lawful performance include a definition of probable cause to be given to the jury when the lawfulness of an arrest is disputed. (CALCRIM 2670.)[5] Similarly, "[w]hether an offense has been committed in an officer's presence is determined by whether the officer could testify to actual knowledge to every element of the offense." (*People v. Garrison* (1961) 189 Cal.App.2d 549, 557; *In re Alonzo C.* (1978) 87 Cal.App.3d 707, 714; *People v. Welsch* (1984) 151 Cal.App.3d 1038, 1044.) Yet the trial court never gave the jury a definition of the elements of

---

[5] At oral argument, the People asserted that any failure to define probable cause was harmless because the prosecutor provided a definition to the jury during closing argument. Even assuming these statements by the prosecutor operated to reduce the potential prejudice from the failure to define probable cause, the failure to define probable cause is only one of multiple deficiencies in the supplemental instructions given to the jury.

vandalism so that they could determine whether officers actually perceived all the elements of the offense. In short, the supplemental instruction simply left the jury to speculate as to what facts might be sufficient to constitute probable cause and what facts might be sufficient to constitute the commission of a vandalism in the officers' presence. Thus, we disagree with both parties' assertion that the initial instructional error can be deemed harmless because any omissions were adequately covered by supplemental instructions given by the trial court.

    3. The Instructional Error Was Prejudicial

We agree with defendant that the instructional error in this case was prejudicial. "When the jury is 'misinstructed on an element of the offense . . . reversal . . . is required unless we are able to conclude that the error was harmless beyond a reasonable doubt.' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 348.) In such cases, a reviewing court "must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error." (*People v. Merritt*, supra, 2 Cal.5th at p. 831.) Here, we cannot say with any confidence that the jury would have reached the same verdict had it been properly instructed in this case.

It is true that the opening and closing arguments presented by counsel focused on the manner in which the officers carried out defendant's arrest. However, as the People acknowledge, "given the evidence adduced at trial and the questions from the jury, the central issue seemingly became whether officers could validly initiate an arrest in the circumstances presented." Thus, despite the arguments of counsel, the jury clearly recognized that it had a duty to first determine whether officers were lawfully performing

12

a duty in the first instance before considering whether specific actions during the course of a detention or arrest might vitiate the officers' otherwise lawful course of action. This was also made apparent by the jury's repeated questions asking for clarification on when an officer is entitled to initiate an arrest in the first instance. Thus, the record makes clear that the jury struggled in reaching a determination on the very element that the trial court failed to define in the instructions. Under such circumstances, we cannot conclude beyond a reasonable doubt that the jury would have reached the same verdict had it been properly instructed on that element and reversal is required.

B. *Retrial*

Because we conclude that reversal is required for instructional error, we need not address defendant's alternative argument regarding sufficiency of the evidence except to the extent that it impacts the ability of the People to retry the matter upon remand. " 'It has long been settled . . . that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction.' " (*People v. Wilson* (2023) 14 Cal.5th 839, 852-853.) However, "[a] settled exception to this rule permitting retrial after a successful appeal occurs when a conviction has been reversed due to insufficiency of the evidence." (*Id.* at p. 853.) Thus, even where reversal is required based on instructional error, an appellant's arguments regarding insufficiency of the evidence should be considered to determine whether retrial is barred by double jeopardy principles. (*People v. Wetle* (2019) 43 Cal.App.5th 375, 388.)

However, the inquiry at this stage is to " 'determine whether, *if properly instructed*, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Hallock* (1989) 208 Cal.App.3d 595, 608-609; see *In re Martinez* (2017) 3 Cal.5th 1216, 1224 [Where instructional error occurs, retrial is barred if defendant can show there was insufficient evidence to support a conviction even when the law is properly construed.].) In this case, defendant argues only that the evidence was insufficient to support his conviction under the erroneous instructions actually given at trial. Specifically, defendant challenges the sufficiency of the evidence to establish the fact that a vandalism was committed in the officers' presence or that the facts known to the officers were sufficient to support probable cause to believe defendant committed felony vandalism.[6] However, defendant has not argued

---

[6] It may very well be that the evidence presented at trial was insufficient to support a conviction under these instructions. However, as we have already pointed out, the instructions themselves were erroneous. Nor do we agree with defendant's characterization of the error as solely that of the prosecutor in failing to submit a correct set of instructions for the trial court's consideration. We observe that the errors in the supplemental instruction were adopted over the prosecutor's objection. The record shows that during the colloquy on supplemental instruction, the prosecutor argued that probable cause to support a lawful arrest need not be limited to probable cause to arrest for the vandalism offense actually charged, and the trial court acknowledged that was the case. Yet, the trial court ultimately stated that it was "going to take the safe route" and gave a supplemental instruction that limited the basis upon which the jury could find a lawful arrest, despite the prosecution's argument against such limitation. Thus, the record shows that the prosecutor failed to properly advise the trial court of the need to fully instruct on the basic issues of law necessary to the case; the trial court failed to recognize the omission of an essential element of the offense from the initial jury instructions; and defense counsel compounded this error by urging the trial court to adopt an incorrect and misleading supplemental instruction when answering the jury's questions.

14

that the evidence presented at trial would be insufficient to support a conviction under properly given instructions.

In our view, the evidence presented at trial was sufficient to support a conviction by a properly instructed jury. Officers testified that they received a report of vandalism; they arrived at the scene to discover broken plexiglass; defendant admitted to one officer that she was responsible for removal of the plexiglass; defendant admitted to one officer that she was motivated by a desire to obtain documents from within the medical office; the medical office staff had retreated to a more secure area of the office; and the medical office staff reported that defendant had been threatening to "fight" them. Given these circumstances, a properly instructed jury could conclude that officers were already engaged in the lawful performance of a detention at the time defendant began resisting.[7, 8]

Likewise, even if the prosecution's theory was that the officers were lawfully in the process of arresting defendant, a properly instructed jury might conclude that officers

---

[7] An officer may legally detain an individual if there are "specific and articulable facts, which reasonably caus[e] the officer to believe that (1) some activity out of the ordinary had taken place or was occurring or about to occur; (2) the activity was related to crime; and (3) the individual under suspicion was connected to the activity." (*People v. Bower* (1979) 24 Cal.3d 638, 644.)

[8] At least one jury question asked: "Does the police officer have absolute authority when giving commands to citizens? Is it law that citizens must always comply to the commands of the police officer? What are the citizen's rights?" This question suggests jurors were not focused solely on the circumstances under which an officer may initiate an arrest but also the circumstances in which a person may be required to cooperate with an officer's investigation generally, such as the officer's initial attempt to obtain identifying information from defendant or request for defendant to stand up prior to informing her of their intent to arrest her.

15

could legally arrest defendant because they had probable cause to believe defendant had committed a felony. "The offense of vandalism, like that of theft, can be either a felony or misdemeanor depending on the value of property at issue." (*In re Arthur V.* (2008) 166 Cal.App.4th 61, 68.) "If the amount of the 'defacement, damage, or destruction' is $400 or more, the offense is punishable as a felony," and the "damages requirement includes any 'cost of repairing or replacing the vandalized property.' " (*People v. Jimenez* (2025) 117 Cal.App.5th 602, 609-610.) Thus, to find probable cause for officers to effectuate an arrest for felony vandalism, the evidence need only be sufficient to permit a jury to conclude that "the facts and circumstances within the knowledge of the officer at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed [the] offense." (*People v. Hogan* (1969) 71 Cal.2d 888, 890.) In our view, the evidence presented in this case was sufficient for the jury to reach this conclusion.[9]

---

[9] Additionally, we respectfully disagree with the People's argument that lawfulness of the officers' actions are viewed in light of and limited by the officers' subjective intent. Generally, " 'probable cause is not vitiated and an arrest remains valid even if the officer purports to arrest the person for the wrong crime.' " (*People v. Alvarez* (2016) 246 Cal.app.4th 989, 1003.) In our view, at least one additional reasonable inference from defendant's own statements is that defendant removed the plexiglass with intent to enter the medical office and obtain the documents that the medical staff had refused to provide defendant. An attempt to enter a private office or other interior room of a business otherwise open to the public remains punishable as attempted burglary under section 459. (*People v. Colbert* (2019) 6 Cal.5th 596, 607-608.) While the offense is considered a "wobbler" punishable as either a misdemeanor or felony (*People v. Chen* (2016) 245 Cal.App.4th 322, 326 [offense of second degree burglary is a wobbler]; §§ 17, subds. (a), (b), 459), its status as a wobbler has no bearing on the lawfulness of a warrantless arrest. This is because "the commission of a wobbler is a felony at the time it

16

Because the evidence presented at trial could have supported a reasonable conclusion that defendant was guilty of the offenses for which she was convicted, and defendant has not argued otherwise, we conclude that retrial is not barred simply because reversal is required for instructional error.

## IV.  DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
                                                                                                    J.

We concur:

RAMIREZ
                     P. J.


RAPHAEL
                     J.

---

is committed" (*People v. Moomey* (2011) 194 Cal.App.4th 850, 857-858) and remains "deemed a felony unless charged as a misdemeanor by the People or reduced to a misdemeanor by the sentencing court" (*People v. Statum* (2002) 28 Cal.4th 682, 685).